IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
BEAUMONT DIVISION

| | | |
|---|---|---|
| JENNINGS TYSON GODSY, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | NO. 1:04-CV-00053 |
| | § | |
| NATIONAL BOARD OF MEDICAL EXAMINERS, | § | |
| | § | |
| Defendant. | § | |

**DEFENDANT'S RESPONSE TO
PLAINTIFF'S SUPPLEMENTAL BRIEF IN SUPPORT
OF PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION**

TO THE HONORABLE U. S. DISTRICT JUDGE:

Defendant National Board Of Medical Examiners ("Defendant" or "NBME") submits this response to Plaintiff's Supplemental Brief in Support of Plaintiff's Motion for Preliminary Injunction, respectfully demonstrating the following:

**I.**

Plaintiff, in filing its Supplemental Brief, has mischaracterized the evidence before the Court. In paragraph 3 of his Supplemental Brief, Plaintiff states that "the facts of this case are very clear. From high school to the most recent evaluation by Dr. Trahan, every professional that has tested and examined Plaintiff has diagnosed him with a learning disability." What the Plaintiff has failed to reveal is the kind of disability diagnoses identified in each evaluator's report:

In its **1990** and **1993** assessments of the Plaintiff, the Bridge City Independent School District diagnosed the Plaintiff as having a learning disability based on deficits in "written expression and spelling".

In **1999**, Dr. Jacobs diagnosed the Plaintiff as suffering from a "learning disorder not otherwise specified (NOS)[1]" which "creates a written expression disorder.".

In February **2004**, Dr. Trahan diagnosed the Plaintiff as suffering from a learning disorder NOS with deficits in reading, written expression, and spelling.

Thus, while all four assessments conclude Plaintiff is suffering from a learning disorder, three of the four assessments cite disorder of written expression or spelling as the basis for the diagnosis. Only Dr. Trahan's evaluation, completed after the commencement of this action, at the request of plaintiff's counsel, describes any deficit in reading as the basis for the Plaintiff's diagnosis of a learning disorder.

The diagnosis of a learning disorder based solely on a disorder of written expression or of spelling is insufficient to support the Plaintiff's request for additional time on Step 1 of the United States Medical Licensing Examination ("USMLE"), as Step 1 is a multiple choice computer based examination which requires no written expression or spelling.

## II.

Plaintiff states in his Supplemental Brief that "the only professional who did not diagnose a learning disability [in Plaintiff] is the Defendant's expert who has never tested or examined Plaintiff, and who herself has never said Plaintiff has no learning disability."

---

[1] The category of Learning Disorder – Not Otherwise Specified is reserved for disorders in learning which do not meet criteria for any specific learning disorder, such as a Reading Disorder. *See, Diagnostic and Statistical Manual of Mental Disorders, 4th edition 2000.*

BEAULITIGATION:637156.1                                2

Counsel fails to understand Dr. Nussbaum's role in this matter. Neither Dr. Nussbaum, nor Dr. Bernier, the Defendant's other expert in this matter, has attempted or been instructed to render a diagnosis for the Plaintiff. Rather, Dr. Nussbaum and Dr. Bernier were asked to review the material submitted by Mr. Godsy in support of his request for accommodations to opine whether or not the material submitted is sufficient to support the existence of the disability proffered by the Plaintiff (*i.e.*, learning disability). The burden is on Plaintiff to establish his entitlement to the accommodations he is requesting. The Defendant has the discretion to assess the information Plaintiff offers to determine whether it demonstrates a disability, as that concept is defined by the ADA, which entitles Plaintiff to those accommodations.

Dr. Nussbaum herself testified at the April 8, 2004 hearing on this matter that "to make an initial diagnosis I feel like you do need to see the patient." *See, Hearing Transcript at p. 146, ll. 9-10.* In this matter, Dr. Nussbaum's role was not to diagnose, but to ensure that the Plaintiff's diagnosis was supported by the material submitted. Thus, the conclusion reached in her report of May 6, 2004 report was not a diagnosis, but was, rather, a statement that there is insufficient evidence to support the diagnosis of a learning disability, and, that, indeed there is a wealth of documentation to the contrary. *See, Nussbaum May 6, 2004 Supplemental Report p. 5.*

Plaintiff's complete misapprehension of the role of the reviewing experts to whom NBME submitted Plaintiff's request is further underscored by Plaintiff, perplexingly, finding fault with the fact that Dr. Nussbaum relies on the information submitted by Mr. Godsy to the NBME. Dr. Trahan testified that in forming his opinion in this matter, he

relied on that same psychological testing. See *Hearing Transcript at 45, ll. 1-7.* Through counsel, Dr. Trahan has indicated that all the information in his possession regarding Mr. Godsy has been produced. This is the same information reviewed and relied on by Dr. Nussbaum.

### III.

Plaintiff points out in his Supplemental Brief that prior evaluators have rendered a diagnosis of learning disorder. The point the Plaintiff fails to acknowledge is that the diagnosis of a learning disorder alone does not entitle the Plaintiff to accommodations. Rather, under the ADA, a person must (1) possess a physical or mental impairment and (2) the physical or mental impairment must <u>substantially limit</u> that person in a major life activity (emphasis added). Thus, the fact that evaluators have diagnosed the Plaintiff as having a suffering from a learning disorder is not enough to establish entitlement to accommodations under the ADA. Rather, the plaintiff must also demonstrate that he has a functional impairment (*i.e.,* he is substantially limited as compared to the general population) and that the functional impairment requires accommodation to "level the playing field."

Even if the Court were to accept the premise that Mr. Godsy suffers from a learning disability based on deficits in spelling and written expression, this deficit does not interfere with the major life activity of reading. This is demonstrated in Table 1. of Dr. Nussbaum's Supplemental Report dated May 6, 2004 in which she describes numerous standardized tests in which Plaintiff exhibits average or better reading skills without any accommodations.

## IV.

In his Supplemental Brief, Plaintiff's counsel implies that Dr. Nussbaum somehow maliciously avoided supplementing her opinion to expressly address the evaluation conducted by Tanya Goldbeck in 1999. In reality, at the conclusion of the April 8, 2004 hearing, the Court requested that Dr. Nussbaum review all of the testing data derived from the assessments of the Plaintiff conducted by Dr. Trahan. Dr. Nussbaum simply had nothing new to add to the prior analysis of Ms. Goldbeck's evaluation which Dr. Nussbaum had already provided in her March 21, 2004 report.

## V.

Finally, Plaintiff's counsel incorrectly states that the Defendant is asking the Court to look at how well Mr. Godsy has performed on tests for which he was granted accommodations. To the contrary, the tests to which Plaintiff's counsel is referring (listed in Dr. Nussbaum's May 6, 2004 Supplemental Report at Table 1) were conducted while Plaintiff was in grades K-9. By the Plaintiff's own testimony, he was not diagnosed with a learning disorder until his sophomore year of high school. See *Hearing Transcript at p. 22, ll. 9-12.* Therefore, the standardized tests taken by the Plaintiff and referenced in Dr. Nussbaum's May 6, 2004 report at Table 1, were administered to the Plaintiff prior to his initial diagnosis of a learning disorder. There is no evidence indicating that Mr. Godsy took these tests under nonstandardized conditions. Those test results demonstrate no deficits in Plaintiff's reading skills.

In conclusion, Plaintiff bears the burden of establishing entitlement to injunctive relief. Plaintiff has failed to meet his burden of proof. In fact, Plaintiff has failed to meet his burden of proof for any of the four required elements that must each be satisfied to entitle him to the relief sought. The Defendant respectfully requests that the Court deny the Plaintiff's request for injunctive relief.

Respectfully submitted,

MEHAFFYWEBER, P.C.
Attorneys for Defendant

By: /s/ Elizabeth Pratt
ELIZABETH B. PRATT, Of Counsel
State Bar No. 16239450

Post Office Box 16
Beaumont, Texas   77704
Telephone: 409/835-5011
Telecopier:  409/835-5177

## CERTIFICATE OF SERVICE

This is to certify that a true and correct copy of the above and foregoing instrument has been forwarded via certified mail, return receipt requested, to the following on this the 23 day of July, 2004:

Mr. Kenneth W. Lewis
Mr. Jeffrey Roebuck
Bush, Lewis & Roebuck, P.C.
1240 Orleans Street
Beaumont, Texas   77701

/s/ Elizabeth Pratt
ELIZABETH B. PRATT